# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT NASHVILLE

Assigned on Briefs June 17, 2024

## STATE OF TENNESSEE v. BOBBY GENE CARNEY

**Appeal from the Criminal Court for Davidson County**
No. 2022-A-54     Steve R. Dozier, Judge

_____

## No. M2023-01305-CCA-R3-CD
_____

The Defendant, Bobby Gene Carney, appeals the trial court's partial revocation of his probation, arguing that the trial court abused its discretion in revoking his probation and ordering him to complete inpatient drug treatment based on a single instance of what were only technical violations. Based on our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and MATTHEW J. WILSON, JJ., joined.

Gina Crawley, Nashville, Tennessee (on appeal and at hearing), for the appellant, Bobby Gene Carney.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Jenny Charles and J. Wesley King, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On January 26, 2022, the Davidson County Grand Jury returned a three-count indictment charging the Defendant with aggravated assault, possession of drug paraphernalia, and public intoxication. On February 23, 2023, the Defendant pled guilty

to aggravated assault, a Class C felony, and was sentenced by the trial court as a career offender to six years, one month in the Tennessee Department of Correction, suspended to supervised probation. Under the special conditions section of his judgment was the notation "6 years + 1 month @ 60% with SCRAM + must complete IOP supervised probation. Stay away from Honky Tonk Central including the outside lobby for customers."

On May 3, 2023, the trial court entered an order that the Defendant be removed from the SCRAM device and placed on random drug screens each week with Stephanie Krivcher.

On May 17, 2023, the Defendant's probation officer, filed a probation violation report alleging that the Defendant had committed a technical violation of his probation by "not complying with his special conditions per the SCRAM Device through Metro DUI probation." The probation officer reported that the Defendant was a "no-show" for his test on May 4, 2023, and that he failed to call his probation officer as required on May 6 and May 9, 2023. A probation violation warrant was filed that same day, and a revocation hearing was held on August 16, 2023, following the Defendant's August 7, 2023 arrest.

At the hearing, Stephanie Krivcher testified that she began supervising the Defendant on May 3, 2023. Prior to that date, the Defendant had been "on SCRAM device[,]" but because he was having issues with payment, he was placed on "Aver testing in lieu of the SCRAM." When asked what had been going on with the Aver test, she responded that the Defendant was simply non-compliant. She said she met with him after court on May 3, 2023, and informed him that he "would be required to call into Averhealth every day" and that there were associated fees, which were his responsibility. She stated that the Defendant, who got "very irritated with [her]" during their conversation, told her that he had neither a phone nor transportation and "basically said, let me just sign this and get out of here." She testified that she told the Defendant if there was an issue and he did not think he would be able to comply with the conditions of probation, they needed to go back into the courtroom and address it immediately. At that point, the Defendant told her that he would use his brother's phone to report.

Ms. Krivcher testified that the Defendant "was just not showing up for any drug screens. He didn't show up for one." She said she noticed that the Defendant was not calling in as required, checked the computer system, and saw that he was also not reporting for his drug screens. She stated she emailed "Mr. Langdon, who then forwarded it to [the Defendant's] probation officer to remind [the Defendant]" that he needed to call in and stop missing his drug tests, but "[the Defendant] just never reported for a drug screen."

Upon questioning by the trial court, Ms. Krivcher testified that the Defendant made the required check-in calls to Averhealth a total of twenty-two times. Although not certain, she assumed that he used his brother's phone to make those calls: "So he made it work 22 times, he just never did it anymore." She said the Defendant last called in on June 28, 2023. The Defendant did not call at all during the month of July. On August 7, 2023, the Defendant was arrested. According to her records, the police were investigating a person with a weapon on Dickerson Pike and while speaking with the suspect, "they found out [the Defendant] had an outstanding warrant."

On cross-examination, Ms. Krivcher acknowledged that in the probation violation report, the Defendant was accused of violating rule ten for violating SCRAM, but that it was actually a violation of "random drug testing."

Defense counsel expressed concern that the Defendant had not been given notice of the additional violations mentioned by Ms. Krivcher. Given the choice of having either a new warrant or an amended warrant filed, she stated that she thought an amended warrant would be sufficient. An amended warrant was filed that same day. The amended warrant again had the "technical only" box checked on the form and included the information that the Defendant was in violation by "not complying with his special condition of daily calling for Avertest[,]" and that he "stopped calling 6/28/2023 and has no calls for July and August when he was arrested."

At the August 17, 2023 hearing, Ms. Krivcher agreed with the trial court's summary of the testimony she had provided at the previous day's hearing, and the Defendant conceded he was guilty of those technical violations. Defense counsel argued, however, that the Defendant was guilty of only "one instance" of "technical violation or violations" and that the trial court could not, therefore, revoke his probation pursuant to Tennessee Code Annotated section 40-35-311(d)(2). Defense counsel proposed that the trial court instead "reinstate his probation and release him back into community." Barring that, defense counsel requested that the Defendant be allowed to apply to either "Buffalo Valley" or "Samaritan Recovery Center" and be released back into community upon his completion of whichever program accepted him. Finally, defense counsel requested as a last option that the trial court order the Defendant to complete the New Avenues residential program, followed by reinstatement to probation.

At the conclusion of the hearing, the trial court found that the Defendant had violated his probation by "not showing up." The trial court further found that it was not "just a technical violation," but instead that the Defendant "wasn't cooperating at all" and "just kind of quit reporting." The trial court, therefore, revoked the Defendant's probation and ordered that he enter treatment at New Avenues, with the Defendant allowed to "try

again with Ms. Krivcher" upon his completion of the New Avenues program. This appeal followed.

## ANALYSIS

The Defendant contends on appeal that the trial court abused its discretion in revoking his probation and ordering him to complete treatment at New Avenues, arguing that his violation was a technicality under Tennessee Code Annotated section 40-35-311(g) because he did not pick up any new charges, violate the community corrections supervision matrix, abscond, or contact the victim. The State argues that the trial court acted within its discretion when it partially revoked the Defendant's probation because the Defendant committed "multiple technical violations of his probation."

A trial court has the discretionary authority to revoke probation upon a finding by a preponderance of the evidence that the defendant has violated the conditions of his or her probation. Tenn. Code Ann. §§ 40-35-310(a); -311(e)(1); *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). The trial court also is vested with the discretionary authority to determine the consequences of a defendant's violation of his or her probation. *See* Tenn. Code Ann. §§ 40-35-310(a); -311(e). "An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is illogical or unreasonable and causes an injustice to the party complaining." *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007) (internal quotation and citation omitted). Probation revocation is a "two-step" process by the trial court. *State v. Dagnan*, 641 S.W.3d 751, 757 (Tenn. 2022). "The first [step] is to determine whether to revoke probation, and the second [step] is to determine the appropriate consequence upon revocation." *Id.* Each step is a separate and distinct decision, although there is no requirement that two separate hearings be held. *Id.* This court must review and address both decisions on appeal. *Id.* at 757-58. If the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequences on the record, this court's standard of review is abuse of discretion with a presumption of reasonableness. *Id.* at 759.

There are two types of probation violations: non-technical and technical. A non-technical violation is "a new felony, new Class A misdemeanor, zero tolerance violation as defined by the department of correction community supervision sanction matrix, absconding, or contacting the defendant's victim in violation of a condition of probation." Tenn. Code Ann. § 40-35-311(e)(2) (Supp. 2022). Upon finding by a preponderance of the evidence that a defendant has committed a non-technical violation, the trial court may "cause the defendant to commence the execution of the judgment as originally entered, which may be reduced by an amount of time not to exceed the amount of time the defendant has successfully served on probation and suspension of sentence prior to the violation." *Id.*

- 4 -

A technical violation is "an act that violates the terms or conditions of probation but does not constitute a new felony, new [C]lass A misdemeanor, zero tolerance violation as defined by the department of correction community supervision sanction matrix, or absconding, or contacting the defendant's victim in violation of a condition of probation." *Id.* at § 40-35-311(g) (Supp. 2022). A trial court may not revoke probation based on one instance of a technical violation or violations. *Id.* at § 40-35-311(d)(2). A trial court may revoke a defendant's probation based upon a second or subsequent technical violation and impose a temporary term of incarceration not to exceed: (1) fifteen days for a first revocation; (2) thirty days for a second revocation; (3) ninety days for a third revocation; or (4) the remainder of the sentence for a fourth or subsequent revocation. *Id.* at § 40-35-311(e)(1)(A). Alternatively, upon a second or subsequent technical violation, a trial court may revoke a defendant's probation and resentence a defendant to a term of probation that includes participation in community-based alternatives to incarceration. *Id.* at § 40-35-311(e)(1)(B).

Because the word "instance" is not defined in the statute, both the Defendant and the State turn to the *Merriam-Webster* definition of an instance as "a step, stage or situation viewed as part of a process or series of events[,]" but with each interpreting the definition differently. Specifically, the State argues that because an instance is a relatively brief period and the Defendant was required to make a phone call every day, "an [instance] of violative conduct occurred each day [the] Defendant failed to make a check-in call." The State also argues that the Defendant's failure to comply with the random drug tests constitute additional technical violations and notes that the revocation statute defines a "technical violation" as "an *act* that violates the terms or conditions of probation." Tenn. Code Ann. §40-35-311(g) (emphasis added). The Defendant, by contrast, argues, *inter alia*, that the dictionary definition "shows that instance can cover a certain period that is delineated by the violation of probation."

We find the State's argument most persuasive. To hold otherwise would result in a criminal defendant's being allowed to flaunt the rules of probation, or as the trial court found in this case, to simply stop cooperating, with no real consequences so long as his violations are only technical violations. "In other words, a probation officer cannot supervise a probationer who refuses to report." *State v. Butler*, No. W2023-00566-CCA-R3-CD, 2023 WL 8234319, at *8 (Tenn. Crim. App. Nov. 28, 2023) (affirming the trial court's revocation of a defendant's probation based on trial court's finding that, by failing to cooperate, the defendant had essentially absconded). We, therefore, affirm the judgment of the trial court ordering a partial revocation of the Defendant's probation and completion of the New Avenues program based on his multiple technical violations of his probation.

## CONCLUSION

Based on our review, we affirm the judgment of the trial court.


                                 _____

                                 JOHN W. CAMPBELL, SR., JUDGE